Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOEL STANLEY,<br><br>                         Plaintiff,<br><br>              vs.<br><br>COVETRUS, INC., PHILIP A. LASKAWY, DEBORAH G. ELLINGER, PAUL R. FONTEYNE, SANDRA L. HELTON, MARK J. MANOFF, EDWARD M. MCNAMARA, STEVEN PALADINO, SANDRA E. PETERSON, RAVI SACHDEV, SHARON WIENBAR, AND BENJAMIN WOLIN,<br><br>                         Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)   Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Joel Stanley ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Covetrus, Inc. ("Covetrus" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to investment funds managed by Clayton Dubilier & Rice, LLC, through merger vehicle Corgi Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "CD&R") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a May 25, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Covetrus's common stock will be converted into the right to receive $21.00 in cash, without interest. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

3.      Thereafter, on June 30, 2022, Covetrus filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of other reasons. Significantly, the Preliminary Proxy Statement describes a Transaction Committee appointed to review the proposed transaction, but fails to disclose the powers that the Transaction Committee had in reviewing the Proposed Transaction, such as whether it was entitled to veto any transaction not in the best interests of common shareholders.

5.      Notably, the Proposed Transaction appears to be an effort by activist stockholder Clayton, Dubilier & Rice, LLC ("CD&R"), which owns or controls approximately 24.1% of the outstanding stock of the Company, and which controls at least two members of the Company Board, including Defendants Peterson and Sachdev.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, on June 30, 2022, Defendants caused to be filed the materially deficient Preliminary Proxy Statement.  The Preliminary Proxy Statement is materially deficient and is thus in violation of the Exchange Act.  As detailed below, the Definitive Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Covetrus and CD&R, provided by Covetrus and CD&R management to the Board's financial advisors Lincoln International ("Lincoln") and Goldman Sachs & Co. LLC ("Goldman Sachs"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Goldman Sachs and provided to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Ohio and, at all times relevant hereto, has been a Covetrus stockholder.

10.     Defendant Covetrus operates as an animal-health technology and services company. Covetrus is incorporated in Delaware and has its principal place of business at 7 Custom

House Street Portland, ME 04101.  Shares of Covetrus common stock are traded on the Nasdaq Stock Exchange under the symbol "CVET".

11.     Defendant Philip A. Laskawy ("Laskawy") has been a Director of the Company at all relevant times.  In addition, Laskawy serves as the Chairman of the Board of Directors.

12.     Defendant Deborah G. Ellinger ("Ellinger") has been a director of the Company at all relevant times.

13.     Defendant Paul R. Fonteyne ("Fonteyne") has been a director of the Company at all relevant times.

14.     Defendant Sandra L. Helton ("Helton") has been a director of the Company at all relevant times.

15.     Defendant Mark J. Manoff ("Manoff") has been a director of the Company at all relevant times.

16.     Defendant Edward M. McNamara ("McNamara") has been a director of the Company at all relevant times.

17.     Defendant Steven Paladino ("Paladino") has been a director of the Company at all relevant times.

18.     Defendant Sandra E. Peterson ("Peterson") has been a director of the Company at all relevant times.

19.     Defendant Ravi Sachdev ("Sachdev") has been a director of the Company at all relevant times.

20.     Defendant Sharon Wienbar ("Wienbar") has been a director of the Company at all relevant times.

21.     Defendant Benjamin Wolin ("Wolin") has been a director of the Company at all relevant times.  In addition, Wolin serves as the Company's Chief Executive Officer ("CEO").

22.     Defendants identified in ¶¶ 11 - 21 are collectively referred to as the "Individual Defendants."

23.     Non-Party CD&R is a privately owned investment funds.

24.     Non-Party Merger Sub is a wholly owned subsidiary of CD&R created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

28.    Covetrus, Inc. together with its subsidiaries, operates as an animal-health technology and services company. It engages in the sale of animal-health consumable products, including proprietary and Covetrus branded products, small equipment, laboratory products, large equipment, equipment repair services, branded and generic pharmaceuticals, vaccines, surgical products, diagnostic tests, infection-control products, parasiticides, and vitamins and supplements to wholesale and retail customers. The company also offers value-added solutions, such as inventory management and e-commerce, as well as continuing education services for practitioners. In addition, it provides practice management software, data-driven applications, client communications tools, and related services to increase staff efficiency and enhance business health; and solutions that integrate with its software platforms, including client communication services, reminders, data backup services, hardware sales and support, and credit card processing services for veterinary practitioners and animal-health clinics. Further, the company engages in the distribution of finished goods pharmacy and specialty pharmaceutical compounding products, as well as offers shipping, manufacturer incentives, service fees, and data integration and support services. It serves animal-health and veterinary practices, and clinics in the companion-animal, equine, and large-animal markets primarily in North America, Europe, and the Asia Pacific. The company was formerly known as HS Spinco, Inc. Covetrus, Inc. was incorporated in 2018 and is headquartered in Portland, Maine.

29.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the February 24, 2022 press release

announcing its 2021 Q4 and 2021 year end financial results, the Company highlighted net sales of $1.12 billion and that Non-GAAP EBITDA had increased 13% year over year.

30.     Speaking on the positive results, CEO Defendant Wolin said, "2021 marked another year of continued progress for Covetrus where we accelerated our pace of innovation, delivered enhanced value to our veterinary practice customers and channel partners, and secured new business as we continued to drive adoption of our technology platform," Wolin said. He continued by stating "We enter 2022 with momentum and visibility alongside an impressive slate of upcoming product launches, including Covetrus Pulse, that we believe will not only drive better outcomes for our customers but also help accelerate our growth, expand our margins, and further solidify our global technology leadership position in the attractive animal health market."

31.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Covetrus. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

32.     Despite this upward trajectory, the Individual Defendants have caused Covetrus to enter into the Proposed Transaction without providing requisite information to Covetrus stockholders such as Plaintiff.

**The Flawed Sales Process**

33.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

34.     The Preliminary Proxy Statement fails to adequately disclose the specific powers of the Transaction Committee, including whether the Committee had the power to veto a Transaction it deemed unfavorable to Common Shareholders.

35.     The Preliminary Proxy Statement also fails to provide adequate reasoning regarding why it was necessary to engage multiple financial advisors. Further, the Preliminary Proxy provides no information regarding the amount of compensation paid, or still owed to Lincoln in exchange for their services. Despite Lincoln not providing a fairness opinion regarding the proposed transaction, the Preliminary Proxy provides no disclosure as to what the scope of Lincoln's duties were.

36.     Moreover, the Preliminary Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and CD&R and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

37.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

38.     On May 25, 2022, Covetrus and CD&R issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **PORTLAND, Maine--(BUSINESS WIRE)**--May 25, 2022-- Covetrus®
> (NASDAQ: CVET) ("Covetrus" or the "Company"), a global leader in animal-
> health technology and services, today announced that it has entered into a definitive
> agreement pursuant to which funds affiliated with Clayton, Dubilier & Rice
> ("CD&R"), a global private investment firm, and TPG Capital, the private equity

platform of global alternative asset management firm TPG ("TPG"), will acquire all outstanding shares of Covetrus common stock not already owned by affiliates of CD&R for $21.00 per share in cash, representing an enterprise value of approximately $4 billion.

CD&R and its affiliates currently beneficially own approximately 24% of the Company's outstanding shares of common stock. The transaction delivers significant value to Covetrus' shareholders and represents a 39% premium to Covetrus' 30-day volume weighted average price per share as of the unaffected stock price as of May 13, 2022.

The proposed transaction has been unanimously approved by a transaction committee of independent directors of the Board of Directors of Covetrus (the "Transaction Committee"). The Board of Directors of Covetrus has unanimously approved the proposed transaction on the recommendation of the Transaction Committee.

"This transaction is an important milestone for our company, shareholders, employees, customers and partners," said Benjamin Wolin, Covetrus' President and Chief Executive Officer and a member of its Board of Directors. "Not only does this deal provide compelling value for our existing shareholders, it allows Covetrus to continue its mission to drive positive outcomes – both business and healthcare – for veterinarians across the globe. We appreciate CD&R's support and their continued commitment to our company and the global veterinary community."

"Covetrus has undergone a true transformation since our initial 2015 investment in its predecessor Vets First Choice, growing from $55 million in revenue focused primarily on online pharmacy in the US to a leading global provider of animal health services with more than $4.6 billion in revenue," said Sarah Kim, Partner at CD&R. "We are excited to have this opportunity to grow our investment in Covetrus and to do so in partnership with TPG and management," added Ravi Sachdev, Partner at CD&R.

"Covetrus offers a dynamic portfolio of leading distribution and technology solutions to veterinarians across the globe," said Jeff Rhodes, Co-Managing Partner at TPG Capital. "The company is at an important stage in its ongoing evolution, and we look forward to partnering with management and CD&R to further its leadership in the growing animal health space," continued Kendall Garrison, Partner at TPG Capital.

The transaction is expected to close in the second half of 2022. Completion of the transaction is subject to certain regulatory approvals and the satisfaction of other customary closing conditions, including the approval of Covetrus' shareholders. The transaction will be financed through a combination of cash funded by investment funds affiliated with CD&R and TPG Capital, as well as committed debt financing.

Upon completion of the transaction, Covetrus will become a private company and will no longer be publicly listed or traded on NASDAQ. Covetrus' management team, including Benjamin Wolin, President and Chief Executive Officer, is expected to continue to lead the Company. Covetrus plans to maintain its headquarters in Portland, Maine, and will continue to operate under its current brands.

***Potential Conflicts of Interest***

39.     The breakdown of the benefits of the deal indicate that Covetrus insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Covetrus.

40.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, the Preliminary Proxy Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| Directors | Shares of Company Common Stock Beneficially Owned | Options Currently Exercisable or within 60 days of June 17, 2022 | Restricted Stock Units Vested within 60 days of June 17, 2022 | Percentage of Outstanding Securities |
|---|---|---|---|---|
| Ellinger, Deborah | 28,459 | — | — | * |
| Fonteyne, Paul | 5,000 | — | 8,275 | * |
| Helton, Sandra | 38,095 | — | — | * |
| Laskawy, Philip | 15,064 | — | — | * |
| Manoff, Mark | 26,595 | — | — | * |
| McNamara, Edward | 31,807 | 77,435 | — | * |
| Paladino, Steven | 74,844 | — | — | * |
| Peterson, Sandra | 23,664 | — | — | * |
| Sachdev, Ravi | 38,095 | — | — | * |
| Wienbar, Sharon | — | — | — | * |
| **Named Executive Officers** | | | | |
| Wolin, Benjamin | 203,531 | — | 21,615 | * |
| Foulston, Matthew | 93,502 | — | — | * |
| Finer, Dustin | 89,370 | — | — | * |
| Wraight, Georgina | 84,251 | 85,429 | — | * |

| | | | |
|---|---|---|---|
| Malenfant, Matthew | 64,895 | — | — | * |
| **All Directors and Officers as a Group, including the foregoing** | 817,172 | 162,864 | 56,810 | * |
| | | | | |
| **Certain Other Beneficial Owners** | | | | |
| BlackRock, Inc. | 16,486,343 | — | — | 11.8% |
| CD&R VFC Holdings, L.P. | 33,670,541 | — | — | 24.1% |
| Vanguard Group, Inc. | 11,226,890 | — | — | 8.0% |
| Wellington Management Group LLC | 7,872,445 | — | — | 5.6% |

41.    Additionally, Notably, Company insiders, currently own large, illiquid portions of Company stock as well as large amounts of company options, restricted stock units, and other equity awards which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Executive Officers | RSU Awards (#) | RSU Awards ($) | PRSU Awards (#) | PRSU Awards ($) | Options (#) | Options ($) | Estimated Total Cash Consideration |
|---|---|---|---|---|---|---|---|
| Benjamin Wolin | 380,587 | 7,992,327 | 388,557 | 8,159,697 | 0 | 0 | 16,152,024 |
| Dustin Finer | 91,183 | 1,914,843 | 84,160 | 1,767,360 | 0 | 0 | 3,682,203 |
| Georgina Wraight | 154,343 | 3,241,203 | 97,350 | 2,044,350 | 61,805 | 766,382 | 5,286,701 |
| Matthew Foulston | 55,676 | 1,169,196 | 44,459 | 933,639 | 0 | 0 | 2,102,835 |
| Matthew Malenfant | 169,861 | 3,567,081 | 95,802 | 2,011,842 | 0 | 0 | 5,578,923 |
| Andrew Coxhead | 41,555 | 872,655 | 0 | 0 | 0 | 0 | 872,655 |
| Rebecca Kidd | 52,325 | 1,098,825 | 42,468 | 891,828 | 0 | 0 | 1,990,65 |

42.    Moreover, certain employment agreements with certain Covetrus executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash($) | Equity($) | Perquisites / Benefits($) | Total($) |
|---|---|---|---|---|
| | **Golden Parachute Payment** | | | |
| Benjamin Wolin | | | | |
| *President and Chief Executive Officer* | $2,231,250 | $16,152,024 | $  45,980 | $18,429,254 |
| Matthew Foulston | | | | |
| *Executive Vice President and Chief Financial Officer* | $1,140,000 | $ 2,102,835 | $  32,667 | $ 3,275,502 |
| Matthew Malenfant | | | | |
| *Chief Commercial Officer* | $1,035,000 | $ 5,578,923 | $  47,108 | $ 6,661,031 |
| Georgina Wraight | | | | |
| *Executive Vice President and President, Global Technology Solutions* | $  962,500 | $ 5,286,701 | $  31,813 | $ 6,281,014 |

| Dustin Finer | | | | |
|---|---|---|---|---|
| *Chief Administrative Officer* | $ 840,000 | $ 3,682,203 | $ 31,813 | $ 4,554,016 |

43.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Covetrus, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Preliminary Proxy Statement

45.     On June 30, 2022, the Covetrus Board and CD&R caused to be filed with the SEC the materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*
*to the Proposed Transaction*

46.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  Adequate information regarding CD&R's role in the genesis of the Proposed Transaction;

b.  Specific information regarding the specific powers of the Transaction Committee;

c.  Specific information regarding why the Board engaged multiple financial advisors, adequate disclosure as to the scope of duties performed by Lincoln, as well as adequate disclosure regarding the compensation paid to, or still owed to Lincoln;

d.  Whether the confidentiality agreements entered into by the Company with CD&R differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including CD&R, would fall away; and

f.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Covetrus' Financial Projections*

47.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Covetrus and CD&R provided by Covetrus and CD&R management to the Board, Lincoln, and Goldman Sachs and relied upon by Goldman Sachs in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company and CD&R which are materially misleading.

48.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Covetrus and CD&R management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

49.     With regard to the *Certain Financial Projections Utilized in Connection with the Merger* prepared by Covetrus Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: net income attributable to the Company, interest expense, net income tax expense, net depreciation and amortization, share-based compensation, strategic consulting costs, transaction

costs, formation expenses, separation programs and executive severance, goodwill impairment charges, capital structure-related fees, other impairments, the value associated with the proportionate share of the adjustments of consolidated and nonconsolidated affiliates where Covetrus ownership is less than 100%, and any other income and expense items used to calculate this metric;

b. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: strategic consulting costs, transaction costs, formation expenses, separation programs and executive severance, cash tax expense, capital expenditures, and net working capital changes over the projection period.

50.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
*Goldman Sachs*

53.     In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.     With respect to the *Illustrative Discounted Cash Flow Analysis* section, the Preliminary Proxy Statement fails to disclose:

a.     The specific inputs and assumptions used to determine discount rates ranging from 9.0% to 11.5%;

b.     The Weighted Average Cost of Capital for the Company;

c.     The present value of the Company as of March 31, 2022;

d.     The range of illustrative terminal values for the Company calculated;

e.     The specific inputs and assumptions used to determine perpetuity growth rates ranging from 2.5% to 3.5%;

f.     The specific inputs and assumptions used to determine implied exit terminal year EV/EBITDA multiples ranging from 6.5x to 10.7x;

g.     The target capital structure weightings for the Company;

h.     The Company's cost of long-term debt;

i.     The Company's after-tax yield on permanent excess cash, if any;

j.     The future applicable marginal cash tax rate for the Company;

k.      The beta for the Company;

      l.    The specific rates of long-term real growth of gross domestic product and inflation used; and

      m.   The ranges of illustrative enterprise values derived for the Company.

55.    With respect to the *Illustrative Present Value of Future Share Price Analysis* section, the Preliminary Proxy Statement fails to disclose:

      a.    The specific inputs and assumptions used to determine a range of illustrative multiples of NTM EV/EBITDA of 10.0x to 13.0x;

      b.    The Company's projected net debt for December 31, 2022, 2023, and 2024;

      c.    The estimated fully-diluted shares of Company common stock outstanding as of December 31, 2022, 2023, and 2024;

      d.    The specific inputs and assumptions used to determine an illustrative discount rate of 11.7%;

      e.    The Company's cost of equity;

      f.    The beta for the Company; and

      g.    The specific financial metrics for the United States markets generally used to compute a range of illustrative present values per share of Company common stock of $17.32 to $27.73.

56.    With respect to the *Selected Transactions Analysis* section, the Preliminary Proxy Statement fails to disclose:

      a.    The value for each selected transaction compared;

      b.    The exact date on which each selected transaction closed;

      c.    The inputs and assumptions used to determine EV/LTM EBITDA multiples of 11.0x to 19.3x;

     d.     The range of illustrative equity values derived for the Company; and

     e.     The number of fully diluted outstanding shares of Company common stock as of May 20, 2022.

57.     With respect to the *Premia Paid Analysis* section, the Preliminary Proxy Statement fails to disclose:

     a.     The specific transactions compared;

     b.     The value of each transaction compared; and

     c.     The specific date on which each transaction closed.

58.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Covetrus stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Covetrus's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

72. The Individual Defendants acted as controlling persons of Covetrus within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Covetrus to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Covetrus and all of its employees. As alleged above, Covetrus is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 8, 2022                     **BRODSKY & SMITH**

                                  By:  _/s/ Evan J. Smith_
                                       Evan J. Smith
                                       240 Mineola Boulevard
                                       Mineola, NY  11501
                                       Phone:  (516) 741-4977
                                       Facsimile (561) 741-0626

                                       *Counsel for Plaintiff*